## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

| | |
|---|---|
| WILLIE G. LEWIS, JR., | |
| Plaintiff, | |
| vs. | CIV. ACTION NO._____ |
| THE MEDICAL CENTER, INC., doing business as Piedmont Columbus Regional Midtown Medical Clinic, and GARY SPEAR, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Willie G. Lewis, Jr., by and through the Undersigned Counsel of Record, and hereby files this Complaint for Damages against Defendants The Medical Center, Inc., doing business as Piedmont Columbus Regional Midtown Medical Clinic, and Gary Spear, respectfully showing the Court as follows:

## I.  JURISDICTION AND VENUE

### 1.

Plaintiff Willie G. Lewis, Jr., brings the above-captioned case pursuant to:  (a) 42 U.S.C. §§ 2000e, *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, ("Title VII") for race discrimination; (b) 42 U.S.C. §

1981, the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1981 ("Section 1981") for race discrimination; and (c) the laws of the State of Georgia for intentional infliction of emotional distress, as well as negligent retention and supervision.

2.

The United States District Court for the Middle District of Georgia, Columbus Division, ("Court") is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 because the above-captioned complaint involves the laws of the United States and with supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the State law claims arise from the same nucleus of operative facts as the Federal law claims.

3.

Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants are located, and a substantial part of the events giving rise to the asserted claims occurred in, the Middle District of Georgia, Columbus Division, and the unlawful conduct forming the basis of the above-captioned complaint occurred in the Middle District of Georgia, Columbus Division.

4.

Prior to commencing the above-captioned case, Plaintiff satisfied all administrative prerequisites to institute this action.  Specifically, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity ("EEOC") within one-hundred-and-eighty (180) calendar days from the day the discrimination took place (Charge No. 410-2018-09312) and Plaintiff has timely commenced the above-captioned case within ninety (90) days of receipt of the Notice of Right to Sue, dated February 5, 2021.

## II.  PARTIES

5.

Plaintiff Willie G. Lewis, Jr., ("Lewis" or "Plaintiff") is a fifty-one (51) year old African-American male, who is a citizen of the United States, resident of the State of Alabama, subject to this Court's jurisdiction, and entitled to bring the claims asserted in the above-captioned case.

6.

At all relevant times, Lewis was an "employee" within the meaning of, among other laws, Title VII, 42 U.S.C. § 2000e(f).

7.

Defendant The Medical Center, Inc., doing business as Piedmont Columbus Regional Midtown Medical Clinic, ("Medical Center") is a Georgia nonprofit corporation providing healthcare services affecting inter-state commerce through its campuses with a principle office located at 707 Center Street, Columbus, Georgia 31902-0790.

8.

Medical Center operates the Midtown Campus located at 710 Center Street, Columbus, Georgia 31901 and the Northside Campus located at 100 Frist Court, Columbus, Georgia 31909 ("Piedmont Columbus Regional").

9.

Medical Center is an "employer" with the meaning of, among other laws, Title VII, 42 U.S.C. § 2000e, with more than twenty (20) employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year while engaging in inter-state commerce.

10.

Medical Center may be served with process through CSC of Cobb County, Inc., 192 Anderson Street, SE, Suite 125, Marietta, Georgia 30060.

11.

Defendant Gary Spear ("Spear") is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

12.

Spear was, at all relevant times, Director of Clinical Engineering, involved in the day-to-day operation of the Medical Center and regularly exercised authority to: (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of the Medical Center.

13.

At all relevant times, Spear supervised Lewis while participating in the unlawful discriminatory, retaliatory, and tortious conduct described herein.

14.

Spear may be served with process at the Medical Center located at 710 Center Street, Columbus, Georgia 31901.

### III.  FACTUAL ALLEGATIONS

15.

Lewis re-alleges and incorporates each and every preceding Paragraph of the above-captioned complaint as if set forth fully herein.

16.

The Medical Center provides healthcare services through Campuses and facilities located in Columbus, Georgia.

17.

Lewis, fifty-one (51) year old African-American male, was formerly employed by the Medical Center as a Clinical Equipment Technician.

18.

Lewis possesses multiple scientific degrees, including an Associate's Degree in Applied Science, Clinical Engineering, from the U.S. Army Fitzsimmons Army Medical Center and a Bachelor of Science in Computer Science from Regis University.

19.

In addition to degrees in Applied and Computer Science, Lewis possesses several professional certifications related to the repair of medical equipment from several manufacturers, including, but not limited to, Siemens Healthineers, Amsco Sterilizers, Soma Tech International, U.S. Med-Equip, Avante Health Solutions, Everx Pvt. Ltd., General Electric, Hospira, B Braun, Better Water Systems, Phillips, US Medical Systems, LLC, Fresenius, and Mar-Cor Purifications.

20.

Prior to working for the Medical Center, Lewis was held several professional positions, including, but not limited to, Clinical Engineer with the U.S. Army and Clinical Engineer with the East Alabama Medical Center.

21.

Beginning on or about June 16, 2014, Lewis began working for the Medical Center as a Clinical Equipment Technician.

22.

As the Medical Center's Clinical Equipment Technician, Lewis was responsible for, *inter alia*, inspecting, maintaining, repairing, and installing equipment and instruments at Piedmont Columbus Regional, as well as other tasks and assignments associated with the maintenance of the facilities and campuses.

23.

While employed at the Medical Center, Lewis diligently performed all tasks while meeting or exceeding all performance expectations.  For example, Lewis's Manager and Director stated that, while employed at the Medical Center, Lewis saved the hospital $30,000.00 monthly and approximately $2,000,000.00 in fees over a period of a year.  Moreover, Lewis' 2017 and 2018 Employee Effectiveness Reports were more positive and favorable than Lewis' similarly situated colleagues, who routinely submitted fact work-orders called "rounds."  Similarly, Lewis was nominated for the "Ace" Award, given to employees exhibiting positive attitudes and effective work ethics.

24.

During the course of employment at the Medical Center, Spear served as Lewis' direct supervisor, responsible for the assignment of duties and tasks at Piedmont Columbus Regional.

25.

During the course of Lewis' employment with the Medical Center, Spear often directed Lewis, and other technicians, to generate fake and unnecessary work orders to falsely increase the Department's productivity numbers.  However, because Lewis did not conduct clinical rounds like the Caucasian technicians, including, but

not limited to, Jamie Raughton ("Raughton") and Christopher Patterson ("Patterson"), Lewis was assigned more work orders. Consequently, Lewis was consistently assigned twice as much work as similarly-situated, Caucasian Technicians like Raughton and Patterson.

26.

In or about February 2016, the Medical Center sought a specialist in ventilator repair. Based upon Lewis' stellar work performance and prior experience repairing ventilators, Lewis immediately expressed interest in the position. Despite superior experience and stellar professional performance, Lewis was not interviewed for the position. Rather, the Medical Center selected Raughton—Caucasian with no ventilator repair experience and inferior education than Lewis—for the position. Conversely, Lewis had approximately six (6) years' experience and training repairing ventilators while serving in the United States military. When Lewis inquired about the position, Spear simply responded, Raughton "was a better fit."

27.

On or about March 22, 2017, Spear gave Lewis a baseless and unjustified written warning for failing to perform a preventative maintenance procedure. However, Lewis did not perform the needless procedure because, in October 2016 and February 2017, other Technicians, Wade Bailey and Peterson, certified the unit

was operating properly.  Nevertheless, Spear still disciplined Lewis without cause or justification.

28.

On or about April 5, 2017, Lewis submitted, to Spear, Jan Woodham ("Woodham"), Caucasian HR Director, and Oliver Banta ("Banta"), Vice President, a complaint, wherein Lewis complained that, based upon race, age, and disability, Lewis was being passed-over for promotions, assigned more duties and tasks than Caucasian Technicians, and unjustly written-up.  In response, Woodham simply responded that no one has ever been discriminated against in her entire career. Defendants failed to address or take any remedial action based upon Lewis' complaints about discrimination.

29.

Immediately following Lewis' complaints about discrimination, Defendants engaged in a retaliatory campaign against Lewis.  For example, Spear became overly critical and scrutinized Lewis' professional performance to find any and all issues, however, Spear did not subject Caucasian Technicians to the same scrutiny or criticism.  Moreover, Spear began to unjustly and without cause write-up Lewis, who was then forced to demonstrate compliance with manufacturer procedures— Caucasian Technicians were not forced to endure this treatment.  Similarly, after

obtaining a copy of Lewis' personnel file, Lewis discovered that Woodham had removed and/or deleted each of the complaints involving discrimination, retaliation, harassment, and unlawful treatment submitted by Lewis.

30.

More egregiously, within three (3) weeks of Lewis' discrimination complaint, Lewis was subjected to an impromptu inspection which uncovered a piece of medical equipment requiring calibration. Although Lewis was previously instructed to complete the calibration, following the instruction, Lewis was assigned a large number of work orders and instructed to only work on certain infusion pumps. Nevertheless, *purportedly* due to the required calibration, Lewis was placed on a Performance Improvement Plan ("PIP") completed in or about July 2017.

31.

On or about January 15, 2018—within weeks of Lewis' complaint—Spear counseled Lewis for *purported* poor work performance. Specifically, Spear falsely accused Lewis of closing out work orders without completing the required repairs. In response to the counseling, Lewis advised Banta that the counseling was incorrect and that Lewis did not trust Spear.

32.

Similarly, on or about January 22, 2018, Lewis scheduled a meeting with Banta to complain about ongoing discrimination, retaliation, and harassment.  Rather than take any remedial action or address Lewis' complaints, Banta simply presented Lewis with a work order that was *purportedly* improperly completed.  However, when Lewis demonstrated that the work order was properly completed, Banta simply responded, "You need to work on your effectiveness."

33.

Again, on or about January 15, 2018—within weeks of Lewis' complaint—Lewis was again placed on a PIP, requiring that at least ten percent (10%) of Lewis' completed work orders be audited every two (2) weeks—none of the Caucasian Technicians, including Raughton or Patterson, were audited in this manner.

34.

During the course of employment, Lewis challenged, verbally and in writing, the false and unwarranted counselings and PIPs.  Moreover, Lewis challenged each write-up with an addendum, demonstrating the false nature of the adverse employment actions.  Like the complaints of discrimination, Woodham removed each addendum from Lewis' personnel file.

35.

Despite the false and unjustified Counseling and PIP, between January and May 2018, Lewis made every effort to address any and all performance issues at the Medical Center.

36.

On or about April 15, 2018, Lewis completed an employee survey, wherein Lewis reasserted complaints about racial discrimination involving Spear and Woodham.

37.

Within weeks of Lewis' April 2018 complaint about racial discrimination, on or about June 7, 2018, the Medical Center terminated Lewis' employment. According to Spear, the basis of the termination was Lewis' *purported* failure to timely repair a central monitoring system.  However, prior to the termination of employment, Lewis ordered a replacement unit to address the performance issues.

38.

Following the termination of employment, the State of Georgia awarded unemployment benefits because Lewis was unemployed through no fault of Lewis.

39.

Although Lewis diligently performed, Defendants treated Lewis unequivocally and significantly less favorably than non-African-American co-workers, including, but not limited to, Raughton and Patterson, who were in similar and comparable positions at Piedmont Columbus Regional.

## IV.  CLAIMS FOR RELIEF

### COUNT I
### RACE DISCRIMINATION
### IN VIOLATION OF TITLE VII
**(Against Defendant Medical Center)**

40.

Lewis re-alleges and incorporate herein, by reference, the preceding Paragraphs as if set forth fully herein.

41.

Title VII prohibits employers from discriminating against an employee based upon, *inter alia*, race, ethnicity, and/o national origin.

42.

As an African-American male, Lewis is a member of a protected class under Title VII.

43.

At all relevant times, Lewis diligently performed and was qualified for the position of Clinical Equipment Technician and Ventilator Technician with the Medical Center.

44.

At all times relevant to this action, the relationship between Lewis and the Medical Center was a relationship of "employee" to "employer" such that a cause of action exists where discrimination on the basis of race is alleged to be the cause of an adverse action directed to the employee by the employer.

45.

During the course of Lewis' employment, the Medical Center acted by and through its agents and employees, including, but not limited to, Spear, each of whom acted in the course and scope of their employment with and for the Medical Center.

46.

Lewis' education, experience, skill, and performance exceeded that of other non-African-American, similarly situated Medical Center employees, including, but not limited to, Raughton, Patterson, and the other employees at the Medical Center whose employment were not terminated or subjected to repeated adverse employment actions, as well as who were afforded professional opportunities denied to Lewis.

47.

Despite Lewis' qualifications and experience, the Medical Center intentionally discriminated against Lewis on the basis of race by, *inter alia*, subjecting Lewis to unfair treatment compared to similarly-situated non-African-American employees, denying employment positions, denying Lewis the same opportunities as similarly situated non-African-American Technicians, subjecting Lewis to multiple PIPs, terminating Lewis' employment, as well as other unlawful actions based solely upon race and/or ethnicity.

48.

Lewis was treated less-favorably than similarly-situated non-African-American Medical Center employees in violation of Title VII.

49.

Defendants' conduct adversely impacted the terms, conditions, and privileges of Lewis' employment with the Medical Center.

50.

Defendants' actions constitute unlawful race discrimination in violation of Title VII.

51.

Defendants willfully and wantonly disregarded Lewis' statutory rights and Defendants' discrimination was undertaken in bad faith.

52.

As a direct and proximate result of the above-described unlawful employment practices, Lewis has suffered and continues to suffer the indignity of race discrimination, the invasion of the right to be free from race discrimination, humiliation, emotional pain, mental distress, inconveniences and mental anguish, for which Lewis is entitled to recover.

53.

Defendants' intentional and illegal conduct entitles Lewis to compensatory damages, as well as any and all other remedies available under Title VII.

54.

Defendants' actions with regard to Lewis demonstrate willful misconduct, malice, fraud, wantonness, oppression, and a complete lack of care entitling Lewis to an aware of punitive damages to deter, punish, and penalize the Medical Center for and from similar future conduct.

**COUNT II**
**RACE DISCRIMINATION**
**IN VIOLATION OF SECTION 1981**
**(Against Defendant Medical Center)**

55.

Lewis re-alleges and incorporate herein, by reference, the preceding Paragraphs as if set forth fully herein.

56.

Section 1981 prohibits employers from discriminating against an employee based upon, *inter alia*, race, ethnicity, and/o national origin.

57.

As an African-American male, Lewis is a member of a protected class under Section 1981.

58.

At all relevant times, Lewis diligently performed and was qualified for the position of Clinical Equipment Technician and Ventilator Technician with the Medical Center.

59.

At all times relevant to this action, the relationship between Lewis and the Medical Center was a relationship of "employee" to "employer" such that a cause of action exists where discrimination on the basis of race is alleged to be the cause of an adverse action directed to the employee by the employer.

60.

During the course of Lewis' employment, the Medical Center acted by and through its agents and employees, including, but not limited to, Spear, each of whom acted in the course and scope of their employment with and for the Medical Center.

61.

Lewis' education, experience, skill, and performance exceeded that of other non-African-American, similarly situated Medical Center employees, including, but not limited to, Raughton, Patterson, and the other employees at the Medical Center whose employment were not terminated or subjected to repeated adverse employment actions, as well as who were afforded professional opportunities denied to Lewis.

62.

Despite Lewis' qualifications and experience, the Medical Center intentionally discriminated against Lewis on the basis of race by, *inter alia*, subjecting Lewis to unfair treatment compared to similarly-situated non-African-American employees, denying employment positions, denying Lewis the same opportunities as similarly situated non-African-American Technicians, subjecting Lewis to multiple PIPs, terminating Lewis' employment, as well as other unlawful actions based solely upon race and/or ethnicity.

63.

Lewis was treated less-favorably than similarly-situated non-African-American Medical Center employees in violation of Title VII.

64.

Defendants' conduct adversely impacted the terms, conditions, and privileges of Lewis' employment with the Medical Center.

65.

Defendants' actions constitute unlawful race discrimination in violation of Section 1981.

66.

Defendants willfully and wantonly disregarded Lewis' statutory rights and Defendants' discrimination was undertaken in bad faith.

67.

As a direct and proximate result of the above-described unlawful employment practices, Lewis has suffered and continues to suffer the indignity of race discrimination, the invasion of the right to be free from race discrimination, humiliation, emotional pain, mental distress, inconveniences and mental anguish, for which Lewis is entitled to recover.

68.

Defendants' intentional and illegal conduct entitles Lewis to compensatory damages, as well as any and all other remedies available under Section 1981.

69.

Defendants' actions with regard to Lewis demonstrate willful misconduct, malice, fraud, wantonness, oppression, and a complete lack of care entitling Lewis to an aware of punitive damages to deter, punish, and penalize the Medical Center for and from similar future conduct.

<u>**COUNT III:**</u>
<u>**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**</u>
<u>**IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA**</u>
**(Against Defendants Medical Center and Spear)**

70.

Lewis re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

71.

Defendants' statements, conduct, and behavior towards Lewis were intentional and reckless, extreme and outrageous, causing Lewis severe shame, humiliation, embarrassment, and emotional distress of a nature that no person should endure.

72.

Defendants' statements, conduct, and behavior towards Lewis demonstrate, among other things, a "retaliatory animus."

73.

At all relevant times, the Parties had a special, employer-employee relationship, wherein Defendants had control over Lewis and Lewis' income and/or livelihood.

74.

When engaging in the intentional, reckless, extreme, and outrageous conduct towards Lewis, Defendants knew that Lewis was dependent upon the income received from the Medical Center.

75.

Defendants repeatedly assigned Lewis excessive work compared to co-workers, subjected Lewis to discriminatory, retaliatory, and harassing conduct, deleted records from Lewis' personnel file, subjected Lewis to unjustified adverse employment actions, falsely accused Lewis of fraudulent behavior, and subjected Lewis to other unlawful and tortious conduct.

76.

Defendants knew or should have known that such conduct would result in the severe emotional distress suffered by Lewis.

77.

As a result of Defendants' conduct, Lewis has and will continue to suffer severe emotional distress and other damages for which Lewis is entitled to recover.

**COUNT IV**
**NEGLIGENT RETENTION AND SUPERVISION**
**IN VIOLATION OF GEORGIA LAW**
**(Against Defendant Medical Center)**

78.

Lewis re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

79.

As a result of the actions taken by Defendants, Lewis is suffering, among other things, discrimination based on race.

80.

The Medical Center owed Lewis a duty to hire, retain, and supervise employees who would lawfully conduct themselves and not engage in discriminatory or tortious conduct.

81.

By negligently retaining and supervising its employees, including, but not limited to Spear, the Medical Center breached its duty to hire, retain, and supervise employees who would lawfully behave.

82.

The Medical Center knew or, in the exercise of ordinary diligence, should have known of the propensity of its employees, including, but no limited to, Spear, to engage in unlawful conduct against Lewis.

83.

By failing to engage in any corrective or remedial action, the Medical Center ratified, condoned, and/or adopted its employees' unlawful conduct.

84.

As a direct and proximate result of the Medical Center's negligent retention and supervision of its employees, as well as the failure to take any remedial or corrective action with respect to the known unlawful actions taken by employees, including, but not limited to, Spear, Lewis suffered damages.

85.

The Medical Center's negligent conduct entitles Lewis to compensatory damages, punitive damages, as well as any and all other remedies available under the law

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully demand a trial by jury and request the following relief:

(a)     That the Clerk of the Court issue summons and original process, served upon Defendants and any other person or entity the Court deems necessary in accordance with the law;

(b)     That the Court grant declaratory judgment that Lewis' rights under, among other laws, Title VII and Section 1981 were violated;

(c)     That the Court award Lewis compensatory damages for all injuries suffered as a result of Defendants' unlawful conduct;

(d)     That the Court award back pay, including, but not limited to, unpaid back wages, lost income, bonuses, incentive compensation, pension, social security, and other benefits in amounts to be shown at trial;

(e)    That the Court award liquidated damages equal to back pay and lost benefits based upon Defendants' willful violations of Title VII and Section 1981;

(g)    That the Court award punitive damages in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such future conduct;

(h)    That the Court award pre-judgment interest on any monetary award;

(i)    That the Court grant a trial by jury as to all triable issues of fact; and

(j)    Further and additional relief as may be just and appropriate.

*[SIGNATURE ON THE FOLLOWING PAGE]*

Respectfully submitted, this 3rd day of May, 2021.

MOLDEN & ASSOCIATES

*/s/ Regina S. Molden*
REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
YIYING ZHANG
Georgia Bar No. 798231
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com
Email:  azhang@moldenlaw.com

*Counsel for Plaintiff Willie G. Lewis, Jr.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| WILLIE G. LEWIS, JR., | |
| Plaintiff, | |
| vs. | CIV. ACTION NO._____ |
| THE MEDICAL CENTER, INC., doing business as Piedmont Columbus Regional Midtown Medical Clinic, and GARY SPEAR, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## LOCAL RULE AND SERVICE CERTIFICATION

The undersigned counsel certifies that this document has been prepared in accordance with the Local Rules and that the foregoing Complaint for Damages has been filed with the Clerk using the CM/ECF system which will notify the attorney(s) of record.

Respectfully submitted, this 3rd day of May, 2021.

MOLDEN & ASSOCIATES

*/s/ T. Orlando Pearson*
T. ORLANDO PEARSON
Georgia Bar No. 180406