IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

WILLIE G. LEWIS,         *

    Plaintiff,       *

vs.                *      CASE NO. 4:21-CV-72 (CDL)

THE MEDICAL CENTER, INC.,  *

    Defendant.      *

_____

O R D E R

Willie G. Lewis worked for The Medical Center, Inc. ("the Hospital"). He claims that the Hospital discriminated against him because of his race, in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Lewis also contends that the Hospital retaliated against him for complaining of racial discrimination, in violation of § 1981 and Title VII, and he asserts two claims under Georgia law. The Hospital filed a summary judgment motion as to all of Lewis's claims. For the reasons set forth below, the motion (ECF No. 33) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of

*material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to the plaintiff, the record reveals the following facts.

Willie Lewis is an African American male. He worked as a clinical equipment technician at the Hospital. Gary Spear, the Hospital's director of clinical equipment, hired Lewis in 2014 and was Lewis's direct supervisor throughout his employment at the Hospital. As a clinical equipment technician, Lewis was responsible for testing, maintaining, calibrating, and repairing biomedical equipment.

During his tenure at the Hospital, Lewis received a series of performance warnings and was placed on several performance improvement plans. On January 11, 2016, Lewis received an "Oral Warning" that was documented on a disciplinary action form. Woodham Decl. Ex. 7, Emp. Counseling & Disciplinary Action at TMCI 00075, Jan. 11, 2016, ECF No. 33-5. According to the

2

warning, "numerous medical devices were incorrectly tagged," and other medical devices "were found to be" in a repair shop "with no work started after being instructed to complete them on prior occasions." *Id.* Lewis contends that he had not been properly trained on the issues. Lewis acknowledges that he signed the discipline form and wrote, "Thanks for making the job at Midtown West clear now." *Id.;* Lewis Dep. 36:18-37:9, ECF No. 35.

On June 15, 2016, Lewis received another "Oral Warning" that was documented on a disciplinary action form, this time for failing to respond in a timely manner while on call. Woodham Decl. Ex. 8, Emp. Counseling & Disciplinary Action at TMCI 00076, June 15, 2016, ECF No. 33-6. Lewis acknowledges that he signed the warning form and commented, "I understand." *Id.* Lewis asserts that he tried to respond to the call but that no one answered when he returned the call. Lewis Dep. 39:7-14.

In early January 2017, Wes Padgett, the manager of the Hospital's X-Ray Department, sent Spear a list of concerns about Lewis. First, Padgett expressed concern that Lewis did not know "the difference between" the Hospital's "CT and MRI scanners." Woodham Decl. Ex. 12, Email from W. Padgett to G. Spear at TMCI 00089, Jan. 5, 2017, 12:14 PM, ECF No. 33-10 at 9. Second, Padgett reported that Lewis claimed to fix a piece of equipment by praying over it. *Id.* Third, Padgett noted that Lewis often relied on other technicians' "knowledge and help" and that when

3

his department had equipment down, they "always seem[ed] to be waiting on someone else to call [Lewis] back about it." *Id.* Lewis did not present evidence to dispute that Padgett expressed his concerns to Spear, but he does contend that he was not responsible for fixing x-ray equipment and thus had to "rely on other technicians' knowledge and help." Lewis Dep. 56:5-13.

Later in January 2017, Spear made a list of his concerns about Lewis's work performance.   Spear noted that three department heads asked that Lewis "not provide service to their departments because of what they perceive to be a lack of work and distracting their staff."   Woodham Decl. Ex. 12, Attach. 1 to Emp. Counseling & Disciplinary Action at TMCI 00083, Jan. 20, 2017, ECF No. 33-10 at 3.   Spear also stated that a department manager reported that Lewis stopped for "excessively long conversations with other employees while he [was] supposed to be working." *Id.*  Spear later witnessed an incident that supported this report—he saw Lewis speaking with another employee near an elevator; when Spear walked back past the elevator fifteen minutes later, Lewis was just finishing the conversation. *Id.* Finally, Spear noted that he observed Lewis "spending a great deal of time on social media or the internet while on duty" and that he had to remind Lewis to get back to work. *Id.*  The Hospital asserts that these concerns resulted in another "Oral Warning" that was documented on a disciplinary action form.

Woodham Decl. Ex. 12, Emp. Counseling & Disciplinary Action at
TMCI 00082, Jan. 20, 2017, ECF No. 33-10 at 2.   Lewis did not
sign the form, and he denies receiving a warning about
inappropriate fraternizing or social media use.   Lewis, however,
did not point to any evidence to dispute that Spear received
complaints about Lewis from other department heads or department
managers.

Lewis received a "Written Warning" on January 20, 2017 for
leaving early "without prior consent or notification."   Woodham
Decl. Ex. 11, Emp. Counseling & Disciplinary Action at TMCI
00077, Jan. 20, 2017, ECF No. 33-9 at 2.   The warning stated
that Lewis had violated the same policy on three prior
occasions.   Lewis does not dispute that he left work early
without prior consent or notification on January 18, 2017, but
he asserts that he had a personal emergency.   Lewis contends
that the warning should have been an oral warning instead of a
written warning.

In February 2017, the manager of the Hospital's neonatal
intensive care unit ("NICU") reported that a baby blanket warmer
had smoke coming from it.   Spear investigated the complaint and
discovered a "significant buildup of lint"—more than a year's
worth.   Woodham Decl. Ex. 13, Attach. to Emp. Counseling &
Disciplinary Action at TMCI 00081, Mar. 22, 2017, ECF No. 33-11
at 3.   Spear reviewed the "PM sticker" which indicated that

Lewis "had performed the PM two days prior," although the work order history did not show any preventative maintenance by Lewis in February 2017.  *Id.*  Lewis contends that another employee, Christopher Patterson, serviced the equipment the day before the problem was reported.  In support of this argument, Lewis points to the device's work order history, which states that Christopher Patterson performed "Rounds" on February 23, 2017, which lasted five minutes.  Pl.'s Resp. to Def.'s. Mot. Summ. J. Ex. C, Work Order at LEWIS 00086, ECF No. 36-5 at 18.  Lewis did not point to evidence of what Patterson should have done during "Rounds," and he did not point to evidence to dispute Spear's note that Lewis was listed on the "PM sticker" as performing PM two days before the blanket warmer started smoking.

After the blanket warmer incident, Spear began an audit of Lewis's work and noted numerous discrepancies "between work logged by [Lewis] in the service record and the actual tags found on the equipment serviced."  Attach. to Emp. Counseling & Disciplinary Action at TMCI 00081, Mar. 22, 2017.  Spear highlighted that Lewis documented that he tested values for an "NICU blood warmer," but the "values stated on the record do not exist for the device tested."  *Id.*  Lewis did not point to evidence to dispute Spear's audit results.

On March 22, 2017, the Hospital's physical therapy department manager notified Spear that the preventative

maintenance on a piece of equipment was past due and that she had already reported the issue to Lewis. Spear had previously assigned Lewis a work order for the equipment, but Lewis did not perform the work expeditiously. Lewis does not dispute that Spear assigned him a work order for the equipment, but he argues that Spear had assigned him too much other work. Spear gave Lewis a written warning on March 22, 2017. Woodham Decl. Ex. 13, Emp. Counseling & Disciplinary Action at TMCI 00080, Mar. 22, 2017, ECF No. 33-11 at 2. The warning states that it is a "Final Written" warning.[1] *Id.* The warning referenced the blanket warmer incident, the blood warmer audit finding, and the physical therapy work order issue. Spear stated that although Lewis had "received coaching with issues of unsatisfactory performance," he had "not shown any improvement in his knowledge or understanding of [the Hospital's] processes." Attach. to Emp. Counseling & Disciplinary Action at TMCI 00081, Mar. 22, 2017. Spear noted that he had received "complaints from two managers about [Lewis's] performance in their areas." *Id.* He also stated that due to "the seriousness of [Lewis's] paperwork inconsistencies and his overall unsatisfactory work

---

[1] Lewis denies receiving a final written warning because he did not remember receiving one. Lewis Dep. 57:1-58:4. Lewis, however, submitted the March 22, 2017 "Final Written" warning as an exhibit to his declaration and stated that it was a "true and correct copy" of the disciplinary action he received on March 22, 2017. Lewis Decl. ¶ 18 & n.9, ECF No. 36-3; Lewis Decl. Ex. 8, Emp. Counseling & Disciplinary Action at TMCI 00080, Mar. 22, 2017, ECF No. 36-3 at 54.

performance," Spear concluded "that a final written warning [was] necessary." *Id.* Spear also placed Lewis on a performance improvement plan.

Lewis asserts that on March 24, 2017, he sent an email to Spear, Hospital Human Resources Director Jan Woodham, and Chief Information Officer Oliver Banta to complain about "being passed-over [sic] and written-up [sic] due to [his] race and age." Lewis Decl. ¶ 19. Lewis also claims that he met with Spear, Woodham, and Banta on April 5, 2017, to express concerns about race, age, and disability discrimination and to complain about being passed over for promotions, being assigned more duties than white technicians, and "unjustified" disciplinary actions. *Id.* ¶ 20.

On August 18, 2017, Spear completed Lewis's annual performance evaluation and gave him an overall rating of 1.963 out of 5.0. *Id.* ¶ 22.[2] The performance evaluation stated that Lewis was placed on a performance improvement plan until October 31, 2017. Lewis Decl. Ex. 12, 2017 Annual Evaluation at TMCI 00102, ECF No. 36-3 at 70. Lewis asserts that when he was taken

---

[2] In his deposition, Lewis denied receiving a negative performance evaluation or one with a score "lower than two." Lewis Dep. 153:24-155:3, 156:14-157:4. But he acknowledged in his declaration that he received an overall rating of 1.963, and he submitted his 2017 performance evaluation as an exhibit to his declaration and stated that it was a "true and correct copy" of that evaluation. Lewis Decl. ¶ 22 & n.13; Lewis Decl. Ex. 12, 2017 Annual Evaluation, ECF No. 36-3 at 66-70.

off the 2017 performance improvement plan, Spear told him he was doing a great job. Lewis Dep. 206:1-5.

In January 2018, Spear received a complaint that a pump in the NICU had an out-of-date inspection sticker. Spear looked up the pump in the database and found that Lewis had performed preventive maintenance on the pump, though the inspection sticker did not reflect that preventive maintenance had been performed. Woodham Decl. Ex. 16, Attach. to Emp. Counseling & Disciplinary Action at TMCI 00064, Jan. 15, 2018, ECF No. 33-14 at 3. Lewis asserts that he properly completed the maintenance work in January 2017, but he did not point to evidence to dispute that the inspection sticker had not been updated. Spear also received a complaint that a work order for a pump was closed with a note that Lewis "reconfigured the pump" even though the pump had not left the office for repair and the pump still had a "defective" label attached to it. *Id.* Lewis contends that the reconfiguration was a software update that did not require onsite service, but he did not point to evidence to dispute that the "defective" label was still attached to the pump after he closed the work order. Based on these two incidents, Spear issued Lewis another "[F]inal [W]ritten"

warning on January 15, 2018 and placed Lewis on another performance improvement plan.  *Id.*[3]

After he received the January 15, 2018 warning, Lewis asked for a meeting with Woodham.  Lewis Decl. Ex. 14, Email from W. Lewis to J. Woodham at LEWIS 000041, Jan. 16, 2018, 8:43 AM, ECF No. 36-3 at 75.  Woodham instructed Lewis to meet with Spear and Banta.  Lewis responded, "I am no longer trying to get help resolving my issues from within the organization.  I am simply being courteous and following protocol.  Currently, I feel that further action is necessary."  *Id.*, Email from W. Lewis to J. Woodham, Jan. 17, 2018, 1:44 PM.  Neither of Lewis's emails to Woodham mentioned discrimination, harassment, or retaliation. Lewis met with Banta on January 22, 2018.  Lewis asserts that he complained about "ongoing racial discrimination, retaliation, and harassment" during that meeting and that Banta responded that Lewis needed to work on his effectiveness.  Lewis Decl. ¶ 26.  Lewis did not point to evidence that he complained to Banta of racial discrimination, harassment, or retaliation after the January 2018 meeting.

---

[3] Lewis admits that he was written up on January 15, 2018, but he denies that it was a final written warning.  Lewis, however, submitted the January 15, 2018 "Final Written" warning as an exhibit to his declaration and stated that it was a "true and correct copy" of the disciplinary action he received on January 15, 2018.  Lewis Decl. ¶ 23 & n.14; Lewis Decl. Ex. 13, Emp. Counseling & Disciplinary Action at TMCI 00063, Jan. 15, 2018, ECF No. 36-3 at 72.

In April 2018, Lewis took an "anonymous" employee survey about the Hospital's workplace environment. Lewis believes that the survey was not anonymous because immediately after he submitted it, Spear "stormed into the Shop" and asked Lewis if he had just completed his survey, then slammed the door after Lewis confirmed that he had. *Id.* ¶ 29. Lewis asserts that he complained about racial discrimination in his survey, and he submitted a "true and correct copy" of the survey that contained comments he says he made. *Id.* ¶ 29 & n.17; Lewis Decl. Ex. 16, Survey Comments at TMCI 00280, ECF No. 36-3 at 134. The comments on Lewis's exhibit do not include explicit complaints of racial discrimination, harassment, or retaliation. Survey Comments at TMCI 00280. The comments do state, "I hope the new management will show more fairness and equal opportunity for training and advancement, instead of the favoritism shown by previous manager!" *Id.*

On May 8, 2018, Lewis was notified that there was a problem with some equipment used to monitor critical condition patients. Lewis contends that once he learned of the issue, he got the proper test equipment, met Spear to work on the problem, resolved all the problems, and left. Pl.'s Resp. to Defs.' Mot. Summ. J. Ex. C, Rebuttal at LEWIS 000565, ECF No. 36-5 at 33. But, when Spear followed up with the chief nursing officer to make sure the problem was fixed, he learned that Lewis had not

set up the equipment correctly, and Spear had to send another technician to fix the problem. Woodham Decl. Ex. 20, Attach. to Emp. Termination Form at TMCI 00155, June 7, 2018, ECF No. 33-18 at 5. Lewis did not present any evidence to create a genuine fact dispute on what happened after he left.

Later on May 8, 2018, Spear received a complaint that some "broken and overdue" equipment was found in the Pediatrics Department. *Id.* Lewis asserts that he gave the equipment a failing grade, placed it in a storage area, and told some nurses that equipment in storage needed to be checked before being put into use. Rebuttal at LEWIS 000565. The storage area, however, was also used for equipment that was in use, so Lewis was asked to repair the device or notify potential users that the device was unsafe for use. Attach. to Emp. Termination Form at TMCI 00155; *see also* Rebuttal at LEWIS 000566 (acknowledging that Lewis was told to put an out-of-service sticker on the device). Lewis taped an "out of service" work order tag to the unit. Rebuttal at LEWIS 000566. Spear, however, determined that the out-of-service notice did not adequately warn potential users that the device was unsafe, so he moved it to the repair shop and told the staff that defective equipment should not be "taken to the floor until repairs are complete." Attach. to Emp. Termination Form at TMCI 00156; *see also* Rebuttal at LEWIS 000565 (acknowledging that the unit was taken to the repair

shop).   Lewis  asserts  that  he  tried  to  purchase  replacement
parts  to  fix  the  unit  but  was  informed  that  the  unit  was  no
longer  serviceable.   At  that  point,  Lewis  moved  the  unit  to  "6-
hub  storage"  with  an  "'out  of  service'  work  order  tag"  on  it,
awaiting  removal  to  permanent  storage.   Rebuttal  at  LEWIS
000566.

Lewis  did  not  present  any  evidence  on  what  happened  after
he  moved  the  unit  to  "6-hub  storage,"  but  the  Hospital  did.
Shortly  after  Lewis  moved  the  unit  to  "6-hub  storage,"  Spear
discovered  that  the  device  was  no  longer  in  the  repair  shop  even
though  no  repair  work  order  had  been  completed.   Attach  to.  Emp.
Termination  Form  at  TMCI  00156.   Spear  was  informed  that  Lewis
"had  returned  the  device  to  the  floor."   *Id.*   Lewis  was  not
present,  and  Spear  wanted  to  make  sure  that  the  device  was  not
in  a  place  where  it  might  be  used  for  patients,  so  he  had  other
staff  members  help  him  locate  the  device.   They  found  the  device
where  Lewis  had  left  it,  "along  with  other  devices  ready  for
patient  use."   *Id.*   Lewis's  work  order  tag  was  still  attached,
but  there  was  no  defective  sticker  to  let  potential  users  know
that  the  device  was  unsafe  for  patient  use.   *Id.*   Spear  had  the
device  "pulled  from  service."   *Id.*

On  May  25,  2018,  a  Hospital  department  manager  sent  Spear  a
letter  to  complain  about  Lewis's  work  performance.   Woodham
Decl.  Ex.  19,  Letter  from  S.  Manning  at  TMCI  00157,  May  25,

2018, ECF No. 33-17.[4]  The department manager complained that (1) equipment was "down for days at a time" because of incorrect or nonexistent preventive maintenance, (2) Lewis could not answer questions about sterilizing equipment without speaking to someone else, and (3) the manager had to ask Lewis to leave the department several times when she found him "hanging out . . . talking and joking with the female staff for lengthy periods of time." *Id.*  The manager asked Spear to assign a different technician to her department.

Spear met with Woodham in early June 2018 to discuss terminating Lewis's employment.  They reviewed Lewis's performance history, including his oral and written warnings, his performance improvement plan opportunities, and the complaints from various department managers.[5]  Woodham Decl. ¶ 34, ECF No. 33-3.  Spear also expressed concern that Lewis was placing patients' lives in danger, and he recommended that Lewis be terminated.  Woodham interviewed at least one department

---

[4] Lewis objects to the department manager's letter as unauthenticated hearsay.  Material cited to support a fact at summary judgment should be excluded if it "cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  But an unauthenticated hearsay statement need not be excluded from the summary judgment record if it can be reduced to admissible form at trial (for example, if the hearsay declarant testifies directly to the matter).

[5] Lewis asserts that someone added negative information to his personnel file without his knowledge because he did not recall ever receiving a final written warning.  But, as discussed above, Lewis submitted copies of those final written warnings and stated that they were true and correct copies of his disciplinary actions.

manager who had complained to Spear about Lewis, and she
confirmed that the department manager was dissatisfied with
Lewis's performance because he caused disruptions and did not
have the necessary level of competency. *Id.* ¶ 37. Woodham
determined that despite the progressive discipline measures and
opportunities to improve, Lewis had not improved but seemed to
be getting worse. *Id.* ¶ 38. Woodham concurred with Spear's
decision to terminate Lewis. *Id.* ¶ 39. Lewis was terminated
from the Hospital on June 7, 2018.

DISCUSSION

Lewis claims that the Hospital discriminated against him
because of his race, retaliated against him because he
complained of racial discrimination, subjected him to
intentional infliction of emotional distress, and negligently
retained and supervised Spear. The Hospital argues that some of
Lewis's claims are time-barred and that Lewis failed to present
evidence to create a genuine fact dispute on others. The Court
addresses each issue in turn.

**I.   The Time-Barred Claims**

A.   <u>Section 1981 and Title VII Claims</u>

The statute of limitations for Lewis's § 1981 claims is
four years. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S.
369, 382-83 (2004) (concluding that § 1981 claims made possible
by the Civil Rights Act of 1991 are subject to the catch-all

four-year statute of limitations established in 28 U.S.C. § 1658). Lewis filed this action on May 3, 2021. Therefore, any § 1981 claims that accrued before May 3, 2017 are time-barred.

A plaintiff seeking relief under Title VII must first exhaust his administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission. 42 U.S.C. § 2000e-5(b), (f)(1). A Title VII plaintiff must file a charge of discrimination with the EEOC within 180 days "after the alleged unlawful employment practice occurred." *Id.* § 2000e-5(e)(1). If he fails to do so, a Title VII claim based on that employment practice is time-barred. Lewis filed a charge of discrimination with the EEOC on September 14, 2018. Thus, Lewis's Title VII claims that accrued before March 18, 2018 are time-barred.

The time-barred § 1981 and Title VII claims include claims based on the Hospital's decision not to offer Lewis three repair specialist opportunities, all of which happened before April 2017. Lewis Dep. 77:6-19, 80:9-19, 219:9-12. They also include any claim based on the Hospital's decision not to consider Lewis for a supervisor position that went to Alan Clark. Lewis did not point to clear evidence of when that decision was made, but he did state that the position was "created when Spear was promoted to Director." Lewis Decl. ¶ 24. Based on the evidence cited by the parties, Spear was the director of the clinical

equipment department by March of 2017. *See* Attach. to Emp. Counseling & Disciplinary Action at TMCI 00081, Mar. 22, 2017 (reflecting Spear's title as "Director of Clinical Equipment"). If Clark was promoted around the same time (by March 2017) like Lewis says he was, then a Title VII or § 1981 claim based on the Clark promotion is time-barred.

Lewis argues that the continuing violation doctrine saves his time-barred Title VII and § 1981 claims. But "discrete discriminatory acts" like failure to promote "are not actionable if time barred, even when they are related to acts alleged in timely filed charges" or complaints. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113. Thus, Lewis's failure to promote claims are time-barred.

B.   State Law Claims

Lewis's state law claims for intentional infliction of emotional distress and negligent supervision/retention are subject to a two-year statute of limitations. O.C.G.A. § 9-3-33. Lewis filed this action on May 3, 2021. Therefore, any state law claims that accrued before May 3, 2019 are time-barred. Lewis argues that the limitations period was tolled while he pursued administrative remedies on his Title VII claim. It was not, and he did not point to any authority that it was.

*Cf. Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 466 (1975) (concluding that Title VII administrative proceedings did not toll statute of limitations for § 1981 claim based on the same alleged facts). Lewis also argues that the alleged infliction of distress continued after his termination, but he did not point to any evidence that any of it occurred after May 3, 2019.[6] Lewis's state law claims are time-barred.

## II. The Remaining Claims

The claims that are not time-barred are Lewis's Title VII claims that accrued after March 18, 2018 and § 1981 claims that accrued after May 3, 2017. Lewis argues that certain disciplinary acts and his termination were both discriminatory and retaliatory. The Court examines each argument in turn.

### A. Discrimination Claims

Lewis claims that the Hospital subjected him to discipline, including termination, because of his race. Title VII and § 1981 both prohibit intentional race discrimination in employment, and the elements of a claim are the same under both statutes, albeit with slightly different causation standards: a plaintiff must prove that his employer took an adverse employment action against him because of his race. *Jenkins v.*

---

[6] Lewis contends that Hospital employees tormented him after he was fired, but the only evidence he cited was that Spear asked another employee to call Lewis and ask how he was doing in August 2018. Lewis Dep. 234:1-12. Even if that conduct could give rise to a claim for intentional infliction of emotional distress, any claim based on the August 2018 conduct is time-barred.

*Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022).  The courts use the same framework for analyzing claims under both statutes.

A plaintiff may establish unlawful racial discrimination with direct or circumstantial evidence.  Lewis asserts that he presented direct evidence of discrimination.  He did not. Direct evidence is "evidence, that, if believed, proves [the] existence of [discriminatory intent] without inference or presumption." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 921 (11th Cir. 2018) (alterations in original) (internal quotation marks omitted) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004)).  If a decisionmaker tells an employee, "you're too old for the job, so I'm promoting a younger employee instead," that would be direct evidence of age discrimination.  Here, Lewis claims that he has direct evidence of discriminatory intent because (1) Spear said he selected a white employee for a specialization because he was "a better fit" and (2) Spear was angry about Lewis's "anonymous" survey response (which, as discussed above, did not include complaints of racial discrimination).  Pl.'s Resp. to Def.'s Mot. Summ. J. 5.  Neither of Lewis's proffered examples of "direct evidence" proves the existence of discriminatory intent without inference.

Without direct evidence of discrimination, a plaintiff may rely on circumstantial evidence.  One method is the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 802-04 (1973). *Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019) (en banc). First, the plaintiff must establish a prima facie case of discrimination, which he may do by showing that (1) he "belongs to a protected class," (2) he "was subjected to an adverse employment action," (3) he "was qualified to perform the job in question," and (4) his employer "treated 'similarly situated' employees outside [his] class more favorably." *Id.* at 1220-21.[7] If the plaintiff meets this burden, the defendant may "articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221. If the defendant articulates a legitimate nondiscriminatory reason, then the plaintiff must "demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination." *Id.*

The Hospital admits that Lewis was a member of a protected class (he is black). The Hospital assumes for summary judgment purposes that Lewis was qualified to perform the job. Lewis argues that each write-up and performance improvement plan was an adverse employment action, but he did not establish that these decisions resulted in a serious and "material change in the terms or conditions of employment," as is required to prove

---

[7] In the termination context, a plaintiff can establish a prima facie case without demonstrating a similarly situated comparator by showing that "someone outside the protected class replaced" him. *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1236 (11th Cir. 2004). Lewis did not establish a prima facie case under this method.

a discriminatory adverse employment action. *Barnett v. Athens Reg'l Med. Ctr. Inc.*, 550 F. App'x 711, 713 (11th Cir. 2013) (per curiam).  Lewis contends that one of the performance improvement plans resulted in the denial of a promotion, but that claim is time-barred.  Lewis did not establish that the write-ups or performance improvement plans were, in any direct way, connected to a denial of a promotion or some other material change in his terms and benefits within the applicable limitations periods.  Thus, they are not actionable adverse employment actions.

There is no dispute that Lewis suffered an adverse employment action when he was terminated.  The Hospital contends, though, that Lewis did not present evidence to establish that it treated a similarly situated employee outside Lewis's protected class more favorably.  Lewis contends that write-ups he received were unjustified and should not have been considered at all—and no white employee received similar write-ups.  He also argues that white technicians made professional mistakes but were not disciplined.

As outlined above, there were at least twelve incidents that resulted in a complaint or write-up (or both) about Lewis's performance.  Even if the Court ignored the write-ups and complaints about misconduct that Lewis says were not his fault (January 11, 2016; June 15, 2016; February 24, 2017), there is

still significant documentation of persistent performance problems—including complaints that Lewis routinely distracted other Hospital staff from their work, instances where Lewis failed to repair equipment correctly even though he believed he had, and occasions when Lewis left defective, dangerous equipment in "for use" areas without adequate warnings that staff should not use the equipment. As discussed above, Lewis did not present any evidence to dispute most of these issues. Even where he did present evidence that he completed repairs that initially worked or documented equipment problems in a way that he thought was acceptable, Lewis did not present evidence to contradict the evidence that Spear often had to follow up on Lewis's work to fix it. Accordingly, Lewis did not create a genuine fact dispute that he did not engage in the conduct the Hospital considered in deciding to fire him. So, he did not establish that he received "unjustified" write-ups while white employees did not.

Lewis contends that even if he did have some performance issues, two white employees "made several professional mistakes" but were not disciplined. Pl.'s Resp. to Def.'s Mot. Summ. J. 9. The two proffered white comparators are Christopher Patterson and Jamie Raughton. To establish the "similarly situated" element of a prima facie case, a plaintiff must demonstrate that he and his "proffered comparators were

'similarly situated in all material respects.'" *Lewis*, 918 F.3d
at 1218.   Ordinarily, a similarly situated comparator "will
share the plaintiff's employment or disciplinary history" and
"will have engaged in the same basic conduct (or misconduct) as
the plaintiff." *Id.* at 1227-28.   Here, Lewis did not point to
evidence that Patterson or Raughton had received an oral or
written warning, that they were the subject of a complaint by
the manager of a department served by the clinical equipment
department, or that they were placed on a performance
improvement plan.   Lewis asserts that Patterson and Raughton
"made several mistakes" that did not result in warnings, Lewis
Dep. 174:15-20, but he did not point to evidence of what those
mistakes were or whether they should have resulted in a warning.
Based on this evidence, Lewis did not meet his burden of
identifying a similarly situated comparator who was treated more
favorably than he was.   Thus, he did not establish that the
Hospital engaged in race discrimination under the *McDonnell
Douglas* burden-shifting framework.[8]

Lewis argues that even if he did not create a genuine fact
dispute on his discrimination claims under the *McDonnell
Douglass* framework, he may survive summary judgment under a
convincing mosaic theory.   A triable fact dispute exists if the

---

[8] Even if Lewis had established a prima facie case of discrimination,
he did not point to evidence that the Hospital's reasons for firing
him were merely pretext for discrimination.

record "presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Jenkins*, 26 F.4th at 1250 (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). "A plaintiff may establish a convincing mosaic by pointing to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) 'systematically better treatment of similarly situated employees,' and (3) pretext." *Id.* (quoting *Lewis*, 934 F.3d at 1185). A convincing mosaic may exist if there is evidence of racially biased comments that "were too remote in time or too attenuated to constitute direct evidence of discrimination," evidence that the supervisor mistreated other members of the plaintiff's protected class, and shifting reasons for a termination decision. *Id.* at 1251. Lewis did not point to such evidence that would allow a jury to infer intentional discrimination. The Hospital is entitled to summary judgment on Lewis's Title VII and § 1981 race discrimination claims.

### B.   Retaliation Claims

In addition to his discrimination claims, Lewis asserts that the Hospital disciplined him in retaliation for complaining of racial discrimination. Both Title VII and § 1981 prohibit an employer from retaliating against an employee for opposing

24

racial discrimination. *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc). A plaintiff may establish Title VII and § 1981 retaliation under a burden shifting framework. To survive summary judgment under this framework, the plaintiff must establish a prima facie case of retaliation by showing that he (1) engaged in statutorily protected activity, (2) suffered a materially adverse action, and (3) "the adverse action was causally related to the protected activity." *Id.* (quoting *Jefferson*, 891 F.3d at 924).[9] Here, Lewis relies on temporal proximity to establish causation— he contends that the Hospital retaliated against him soon after every complaint he made. A plaintiff's "burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam). "But mere temporal proximity, without more, must be 'very close.'" *Id.* (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam)). "A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." *Id.* "Thus, in the absence of other evidence tending

---

[9] If the plaintiff establishes a prima facie case, then the employer may articulate a legitimate nonretaliatory reason for the employment action. *Id.* at 1136. If the employer proffers such a reason, the plaintiff must establish that the proffered reason was pretext for retaliation. *Id.*

to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Id.*

Lewis contends that he engaged in statutorily protected activity on five separate occasions. The first two were in 2017—a March 24, 2017 email to Spear, Woodham, and Banta to complain about being passed over for promotions and written up because of his race and age, and an April 5, 2017 meeting with Spear, Woodham, and Banta to express concerns about race, age, and disability discrimination. These two incidents constitute protected activity. Lewis contends that after these incidents, Spear gave him an unfavorable performance evaluation and placed him on a performance improvement plan. But that did not happen until August 18, 2017—more than four months after Lewis engaged in protected activity. He did not point to other evidence to establish causation. Accordingly, Lewis did not establish a prima facie case of retaliation based on the March and April 2017 complaints.

Lewis next asserts that he engaged in statutorily protected activity in January 2018, shortly after he received a written warning. He sent emails to Woodham on January 16 and 17, 2018 requesting a meeting and "further action" to resolve his "issues." Email from W. Lewis to J. Woodham at LEWIS 000041, Jan. 16, 2018, 8:43 AM; *id.*, Email from W. Lewis to J. Woodham,

Jan. 17, 2018, 1:44 PM.  Neither email mentioned discrimination, harassment, or retaliation, so neither email put the Hospital on notice that Lewis might have been complaining of racial discrimination.  Since the January 16 and 17 emails do not clearly oppose employment practices made unlawful by Title VII and § 1981, they are not protected activity, and Lewis did not establish a prima facie case of retaliation based on the emails.

Lewis also met with Banta on January 22, 2018.  He asserts that he complained of racial discrimination, retaliation, and harassment, which is protected activity.  But Lewis did not point to any evidence of materially adverse action that occurred after this complaint, except for his June 7, 2018 termination, which occurred more than four months after the protected activity.  Lewis did not point to other evidence to establish causation, and he thus failed to establish a prima facie case of retaliation based on the January 22, 2018 complaint.

Finally, Lewis asserts that he engaged in protected activity when he took an "anonymous" employee survey in April 2018.  The Court assumes that Lewis created a genuine fact dispute on whether Spear was aware of his survey response. While Lewis argues that he complained about racial discrimination in the survey response, he submitted a copy of the survey response that he says contains his comments, and those comments do not include any explicit complaints of racial

27

discrimination, harassment, or retaliation.  The survey response did not put the Hospital on notice that Lewis was opposing employment practices made unlawful by Title VII and § 1981.  It is not protected activity, and Lewis did not establish a prima facie case of retaliation based on the survey response.

In summary, Lewis did not present evidence that would allow a juror to infer that the Hospital subjected him to a materially adverse action for engaging in protected activity.[10]  The Hospital is entitled to summary judgment on Lewis's Title VII and § 1981 retaliation claims.

CONCLUSION

As discussed above, the Hospital's summary judgment motion (ECF No. 33) is granted.

IT IS SO ORDERED, this 28th day of October, 2022.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[10] Even if Lewis had established a prima facie case of retaliation, he did not point to evidence that the Hospital's reasons for writing him up or firing him were merely pretext for retaliation.